UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| JONATHAN COTTRELL, et al., | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) ) | Civil Action No. 24-cv-11926-DJC |
| JASBIR MANN, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                           **July 15, 2025**

**I.     Introduction**

Plaintiffs Jonathan Cottrell and Rebbecca Cottrell (collectively, the "Cottrells"), have filed this lawsuit against Defendants Jasbir Mann ("Mann"), Rosemarie Cote ("Cote"), Randy Spencer ("Spencer), Kyle Vieira ("Vieira"),[1] (the "Individual Defendants") and Jennifer Sullivan ("Sullivan"), Kellee-Sue Milord ("Milord") (the "Clerks"), Bristol Superior Court (the "Superior Court") and Assistant Clerk(s) 1-3 (the "State Court Defendants") (collectively, "Defendants") alleging violations of her First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 ("§ 1983") (Count I), civil rights conspiracy pursuant to § 1983 (Count II) and fraud on the Court (Count III). D. 15. Additionally, the Cottrells have moved to consolidate this case with other cases, to stay this Court's order to remand a related case to the Superior Court, to enjoin the

---

[1] The Cottrells refer to Vieira as "Viera" throughout both the first and second amended complaints. D. 4; D. 15. Because this is the incorrect spelling, the Court will refer to the correct spelling, Vieira, in this Memorandum and Order.

1

Superior Court's proceeding and to compel compliance with Superior Court's subpoenas. D. 21. The Cottrells also moved to strike portions of the Individual Defendants' memorandum in support of their motion to dismiss. D. 10; D. 13. Defendants have moved to dismiss the Cottrells' complaints. D. 5; D. 18. Additionally, the Individual Defendants also moved for attorneys' fees, D. 5 at 1, and the State Court Defendants moved the Court to preclude the Cottrells from making further filings without leave of Court, D. 23 at 8. For the reasons stated below, the Court ALLOWS Defendants' motions to dismiss, D. 5; D. 18, and the State Court Defendants' motion to preclude further filing without leave of Court, D. 23 at 8, but DENIES the Individual Defendants' motion for attorneys' fees, D. 5 at 1. The Court DENIES the Cottrells' motions. D. 10; D. 13; D. 21.[2]

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the

---

[2] Additionally, after the hearing, the Cottrells filed a motion for summary judgment and declaratory relief, D. 30, motion to supplement, D. 31, and a supplement to motion for summary judgment and declaratory relief and motion for leave to supplement pleadings, D. 33. Given that the Court is granting the motions to dismiss for the reasons discussed herein, these motions, D. 30, 31 and 33, are DENIED as moot.

complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

## III. Factual Background

The following summary is based upon the allegations in the Cottrells' second amended complaint, D. 15, and are accepted as true for the purposes of resolving Defendants' motions to dismiss.

This case originated from a contractual dispute between the Cottrells and Mann and Cote. D. 15 ¶ 17. On December 1, 2021, Mann and Cote filed a lawsuit in the Superior Court alleging violations of Mass. Gen. L. c. 93A, fraud and other state law claims. D. 15 ¶ 20; see generally Mann et al. v. Cottrell et al., 2173CV00870, D. 1. On April 25, 2022, Mann and Cote, through their attorneys, Spencer and Vieira, served the Cottrells via email with a special motion to dismiss under SLAPP[3] ("SLAPP Motion") in accordance with Superior Court Rule 9A ("Rule 9A"). D. 15 ¶ 23. On May 5, 2022, the Cottrells, through their attorney, electronically served Mann and Cote with a motion for judgment on the pleading and opposition. Id. ¶ 24. As alleged, pursuant to Rule 9A, Mann and Cote were required to either file and electronically serve the Cottrells with the SLAPP Motion by May 16, 2022, or withdraw the special motion. Id. ¶ 25. Mann and Cote were also allegedly required to serve the Cottrells with an opposition to the motion for judgment on the pleadings by May 16, 2022. Id. ¶ 26. As alleged, they did neither. Id. ¶ 27.

---

[3] SLAPP suits are "generally meritless suits brought . . . to deter common citizens from exercising their political or legal rights or to punish them for doing so." Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161 (1998) (quoting Wilcox v. Superior Court, 27 Cal. App. 4th 809, 816-17 (1994)). A defendant may move to dismiss such a lawsuit by filing a special motion to dismiss, "which can be brought prior to discovery, and is intended to dispose of 'civil claims, counterclaims, or cross claims' that are based solely on a part's exercise of its right to petition." Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 147 (2017) (citing Mass. Gen. L. c. 231, § 59H), overruled on other grounds by Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539 (2024).

On May 19, 2022, the Cottrells electronically filed and served Mann and Cote with a motion for judgment on the pleadings which included an opposition to the SLAPP Motion. Id. ¶ 28. On May 20, 2022, Mann and Cote filed an opposition to that motion directly with the Superior Court. Id. ¶ 32. The opposition allegedly never was served to the Cottrells. Id. ¶ 33. On June 16, 2022, the Cottrells served Mann and Cote a motion to strike the opposition. Id. ¶ 35. On June 29, 2022, Mann and Cote filed an opposition to same with the court without serving it with the Cottrells. Id. ¶ 36. In addition, from May 19, 2022 through July 7, 2022, Spencer and Vieira allegedly engaged in *ex parte* communications with the Clerks. Id. ¶ 31.

On July 7, 2022, the Superior Court heard the Cottrells' motion for judgment on the pleadings and emergency motion to strike Mann and Cote's opposition to same. Id. ¶ 38. During the hearing, the Clerks allegedly advised the Superior Court judge to consider both the abovementioned motions and the SLAPP Motion. Id. ¶ 39. The court granted both the SLAPP Motion and the opposition to the motion for judgment on the pleadings. Id. ¶ 41. The Cottrells appealed the court's decision but it was denied as premature. Id. ¶ 43.

As alleged, in December 2023, the Clerks recommended Spencer and Vieira in an *ex parte* communication to submit a motion for fees which was filed directly with the Superior Court on December 13, 2023. Id. ¶ 47. Milord allegedly asked Spencer *ex parte* whether he had served the motion to the Cottrells, which Spencer responded that he did not believe he needed to do so. Id. ¶¶ 49-50. The motion was docketed and the court set the motion hearing for January 18, 2024. Id. ¶¶ 51-53, 55. After learning about these alleged *ex parte* communications, the Cottrells removed the case to this Court. Id. ¶ 54. Notwithstanding the removal, the Superior Court moved forward with the January 18 hearing on the motion for fees and ordered the Cottrells to pay Vieira and Spencer $ 13,320 in attorney fees and costs. Id. ¶ 55-57.

## IV.    Procedural History

On January 18, 2024, the Cottrells removed the case to this Court in a separate docket, Mann et al. v. Cottrell et al., 24-cv-10135-DJC, D. 1.  The Individual Defendants moved to remand the case, Mann et al. v. Cottrell et al., 24-cv-10135-DJC, D. 8, which the Court allowed on April 30, 2024, ordering remand to state court.  Mann et al. v. Cottrell et al., 24-cv-10135-DJC, D. 21. On May 24, 2024, the Cottrells filed a notice of appeal to this Court's Order.  Mann et al. v. Cottrell et al., 24-cv-10135-DJC, D. 28.  The First Circuit affirmed the Court's Order on January 16, 2025. Mann et al. v. Cottrell et al., 24-cv-10135-DJC, D. 32.  On November 11, 2024, the Superior Court transferred the case to the Plymouth Superior Court.  Mann et al. v. Cottrell et al., 2173CV00870, D. 57.  On February 27, 2025, the Plymouth Superior Court entered a sanction order resulting in a default judgment against the Cottrells on all claims in the Superior Court complaint.  Mann et al. v. Cottrell et al., 2483CV01008, D. 117.

The Cottrells filed the initial complaint in this case on July 24, 2024, D. 1, which was first amended on October 21, 2024, D. 4.  On November 7, 2024, the Individual Defendants moved to dismiss to first amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  D. 5.[4]  On November 21, 2024, the Cottrells moved to strike the Individual Defendants' memorandum in support of their

---

[4] The Court notes that the Individual Defendants have moved to dismiss only the first amended complaint.  D. 5.  Although "[a]n amended complaint, once filed, normally supersedes the antecedent complaint," Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008) (citing InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003)), district courts may still consider a motion to dismiss the prior complaint if "the amended complaint is 'substantially identical to the amended original complaint[.]'"  Mandali v. Clark, No. 13-cv-1210, 2014 WL 5089423, at *2 (S.D. Ohio Oct. 9, 2014) (quotations omitted).  Because the only major change in the second amended complaint appears to be the replacement of Defendant John Does 1-3, D. 4 ¶ 8, to Assistant Clerk(s) 1-3, D. 15 ¶ 9, the Court deems the Individual Defendants' motion to dismiss applicable to same.  See Markham Concepts, Inc. v. Hasbro, Inc., No. 15-cv-419-WES, 2017 WL 4685074, at *1 n.1 (D.R.I. Oct. 17, 2017) (holding that the defendant's motion to dismiss should apply to the plaintiffs' third amended complaint in the interest of efficiency).

motion to dismiss. D. 10. The motion to strike was then amended on November 26, 2024. D. 13. On November 28, 2024, the Cottrells filed a second amended complaint. D. 15. The State Court Defendants moved to dismiss the second amended complaint on December 18, 2024. D. 18. On December 29, 2024, the Cottrells moved to consolidate this case with the related federal district case, Mann et al. v. Cottrell et al., 24-cv-10135-DJC as well as with the then-pending case in the First Circuit, Mann et al. v. Cottrell et al., 24-1555, to stay remand and to compel compliance with lawful subpoenas. D. 21. The Court heard the parties and took the matter under advisement. D. 29.

V. **Discussion**

    A. **Motion to Dismiss for Failure to State a Claim**

        1. **State Court Defendants**

            *1. Sovereign Immunity Bars the Claims against the State Court Defendants*

"The Supreme Court . . . has expanded the doctrine of sovereign immunity beyond the literal words of the Eleventh Amendment, holding that state governments, absent their consent, are not only immune from suit by citizens of another state, but by their own citizens as well." Surprenant v. Massachusetts Tpk. Auth., 768 F. Supp. 2d 312, 316 (D. Mass. 2011) (alterations in original) (quoting Guillemard-Ginorio v Contreras-Gomez, 585 F.3d 508, 529 n.23 (1st Cir. 2009)). Thus, "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damage action against a State in federal court." Kentucky v. Graham, 473 U.S. 159, 169 (1985) (citing Ford Motor Co. v. Dep't of Treasury of Indiana, 323 U.S. 459, 464 (1945), overruled on other grounds, Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613 (2002)).

Relatedly, the Eleventh Amendment bars the Cottrells' § 1983 claim against the Superior Court because the court, as "part of the Massachusetts judicial system," is "[an] instrumentalit[y] of the State" and as such "[is] not subject to suit under § 1983, in light of [its] sovereign immunity[.]" Dicenzo v. Prob., No. 15-cv-30171-MAP, 2015 WL 9690895, at *3 (D. Mass. Nov. 19, 2015) (alterations in original) (citing Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002)), report and recommendation adopted sub nom. Dicenzo v. Massachusetts Prob. & Fam. Ct., No. 15-cv-30171-MAP, 2016 WL 128127 (D. Mass. Jan. 12, 2016). Because the Superior Court is an instrumentality of the state, the Eleventh Amendment also bars the § 1983 claim against the Clerks to the extent that they are being sued in their official capacity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (concluding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself") (internal citation omitted).

The Cottrells argue that the Eleventh Amendment is not a bar to their § 1983 claim. First, relying on the fact that the Superior Court is referred to as the "Bristol County Superior Court," the Cottrells contend that Eleventh Amendment sovereign immunity is inapplicable because the Superior Court is a county court and as such "are persons under Section 1983 and thus may be sued." D. 22 at 2. In Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 & n.54 (1978), the Supreme Court held that the Eleventh Amendment is not "a bar to municipal liability." Id. (citations omitted); see Mt. Healthy City Sch. Dist. Bd. Of Educ. V. Doyle, 429 U.S. 274, 280 (1977). As discussed above, however, the Superior Court is part of the Massachusetts judicial system and is therefore an arm of or an instrumentality of the state for the purposes of the Eleventh Amendment. See Dicenzo, 2015 WL 9690895, at *3 (citing Brown, 291 F.3d at 92). The fact that the Superior Court's name refers to the county where it sits does not transform the

court into an entity subject to § 1983 claims.  See e.g., McNeil v. Bristol Cnty. Prob., No. 16-cv-11712-FDS, 2016 WL 5799014, at *1 (D. Mass. Oct. 3, 2016) (describing the Bristol County Probate Court as being "an arm of the state" and is therefore "immune from suit in federal court under the Eleventh Amendment").

Second, the Cottrells contend that Congress, in enacting § 1983, "has overridden Eleventh Amendment immunity in civil rights legislation."  D. 25 at 9.  "In order to determine whether Congress has abrogated the States' sovereign immunity," the Court must consider (1) "whether Congress has 'unequivocally express[d] its intent to abrogate the immunity,'" and (2) "whether Congress has acted 'pursuant to a valid exercise of power.'"  Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 55 (1996) (alterations in original) (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)).  Contrary to the Cottrells' assertion, "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States."  Quern v. Jordan, 440 U.S. 332, 344 (1979).  Accordingly, the Cottrells cannot defeat the State Court Defendants' sovereign immunity by pleading a § 1983 claim.[5]

---

[5] The Cottrells also argue that the State Court Defendants are not immune to their § 1983 claims because they are only seeking injunctive relief and attorneys' fees.  D. 22 at 4-5.  In support of this argument, the Cottrells cite Pulliam v. Allen, 466 U.S. 522 (1984) where the Supreme Court held that judicial immunity is not a bar in cases where a plaintiff seeks prospective injunctive relief under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988.  Id. at 541-43.  Two years after this decision, however, "Congress passed the Federal Courts Improvement Act (the 'FCIA'), amending § 1983 to bar injunctive relief 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory degree was violated or declaratory relief was unavailable.'"  Pelletier v. Rhode Island, No. 07-cv-186S-WES, 2008 WL 5062162, at *5 (D.R.I. Nov. 26, 2008) (quoting the amended 42 U.S.C. § 1983).  "Employing the same language, the FCIA also amended 42 U.S.C. § 1988(b) to likewise bar actions for attorneys' fees against 'a judicial officer.'"  Phillips v. Conrad, No. 10-cv-40085-FDS, 2011 WL 309677, at *7 (D. Mass. Jan. 28, 2011) (citing 42 U.S.C. § 1988(b)), as corrected (Feb. 18, 2011).  Courts have interpreted the phrase "judicial officer" in the FCIA to cover officers who perform quasi-judicial functions, including court clerks.  See Brown v. Rhode Island, 511 F. App'x 4, 6 (1st Cir. 2013) (stating that the FCIA likely bars request for injunctive relief against quasi-judicial officers) (citations omitted); Phillips, 2011 WL 309677, at *8 (concluding that the FCIA's

For the stated reasons, the Court allows the State Court Defendants' motion to dismiss the claims on this ground.

### 2. *Quasi-Judicial Immunity Also Bars the Claims against the State Court Defendants*

The claims against the State Court Defendants are also barred by quasi-judicial immunity. "Except where judges act completely without jurisdiction, they are protected from liability under section 1983 by the well-established doctrine of judicial immunity." Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980). Derivative from this doctrine is the doctrine of quasi-judicial immunity, under which absolute immunity is afforded to "public officials . . . who perform quasi-judicial functions." Brockton Power LLC v. City of Brockton, 948 F. Supp. 2d 48, 65 (D. Mass. 2013) (quoting Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010)). Courts have interpreted this doctrine to apply to court clerks. See Slotnick, 632 F.2d at 166 (and cases cited); McNeil v. State of Mass., No. 14-cv-14370-DJC, 2014 WL 7404561, *3 (D. Mass. Dec. 30, 2014) (acknowledging that courts have found that employees of the court, including clerks and deputy clerks, enjoy quasi-judicial immunity).

The Cottrells contend that the Clerks are not entitled to quasi-judicial immunity. First, they argue that quasi-judicial immunity does not apply because the conduct at issue here was "administrative in nature." D. 25 at 10. Although non-judicial acts are generally excepted from the quasi-judicial immunity doctrine, the First Circuit has defined judicial acts to include "those that are 'intimately associated' with the judicial function." Nystedt v. Nigro, 700 F.3d 25, 31 (1st Cir. 2012) (citing Burns v. Reed, 500 U.S. 478, 486 (1991)). Nystedt is instructive. There, the

---

limitation on injunctive relief and attorney fees to judicial officers apply to quasi-judicial officers). Therefore, that the Cottrells are only seeking injunctive relief and attorney fees does not defeat the State Court Defendants' quasi-judicial immunity as to the claims against them.

plaintiff in a probate action alleged that a discovery master (who was appointed by the probate court) engaged in various misdeeds as part of a racketeering conspiracy, including sending invoices and engaging in improper *ex parte* communications. Id. at 28-29. The plaintiff asserted that the discovery master was not entitled to quasi-judicial immunity, in part, because "sending an invoice is 'administrative,' rather than a 'judicial' act." Id. at 32. The court rejected this argument, holding that "[t]his averment suggests a false dichotomy." Id. The court explained that although "[t]he administrative character of an act might make a difference if the act was not intimately associated with the performance of core judicial functions," in that case, "the administrative act of sending invoices was integrally related to [the discovery master]'s work as a court-appointed discovery master and, therefore, the immunity attaches to the act." Id. (citations omitted). Here, likewise, although the Clerks' alleged conduct, including the docketing of motions, *ex parte* communications with the Individual Defendants regarding said motions and referring of those motions to the Superior Court for adjudication can be considered "administrative," they are also "intimately associated" with judicial functions of that court and as such the Clerks are entitled to quasi-judicial immunity. Id. at 31.[6]

For the reasons stated above, the State Court Defendants' motion to dismiss is allowed on this ground as well.[7]

---

[6] To the extent that the Contrells argue that the Court Defendants are not entitled to quasi-judicial immunity because they are not entitled to "qualified immunity," D. 22 at 3-4, they have confused two different doctrines. As an initial matter, Commonwealth Defendants have not raised a qualified immunity defense. Moreover, qualified immunity is a different form of immunity and as such has no bearing on whether the Clerks are entitled to a quasi-judicial immunity.

[7] Given this ruling, the Court needs not reach the State Court Defendants' Rooker-Feldman or collateral estoppel grounds for dismissal or their arguments that the Contrells have not plausibly pled any of the claims against them. D. 19 at 11-15.

### 2. Individual Defendants

#### 1. *Count I: § 1983 Claim*

The Individual Defendants argue that the Cottrells have failed to state a § 1983 claim because the complaint does not contain an allegation that Individual Defendants were acting "under the color of the law," D. 6 at 9, a requisite element of a § 1983 claim. See Lath v. Oak Brook Condominium Owners' Ass'n, No. 16-cv-463-LM, 2017 WL 1051001, at *10 (Mar. 20, 2017) (quoting Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016).[8] In rare circumstances, "a private person can be sued under § 1983" where his or her conduct "can be deemed fairly attributable to the state." Meuse v. Stults, 421 F. Supp. 2d 358, 362 (D. Mass. 2006) (quoting Destek Group Inc. v. State of New Hampshire Public Util. Com'n, 318 F.3d 32, 40 (1st Cir. 2003)). There are "[t]hree scenarios in which a private person's conduct may be fairly attributed to the state." Id. First, where the "private defendant is aligned so closely with the state" that there is an interdependence between the state and the defendant. Id. (citations omitted). Second, "where a private person receives such 'significant encouragement' from the state that the questioned conduct must in law be deemed to be that of the state." Id. (quoting Mitchell v. Home, 377 F.

---

[8] The Cottrells have moved this Court to strike portions of the Individual Defendants' memorandum in support of their motion to dismiss, pursuant to Fed. R. Civ. P. 12(f), specifically paragraphs 1-10, 12-15, 16 and 18 as well as exhibits 4 and 5. D. 10 at 2-4; D. 14 at 2-4. Alternatively, the Cottrells also moves the Court to "strike the unresponsive [memorandum] and exhibits in their entirety." D. 10 at 5 ¶ 2; D. 14 at 5, ¶ 2. "Federal Rules of Civil Procedure 12(f) authorizes a court 'to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter.'" Minahan v. Town of E. Longmeadow, No. 12-cv-30203-MAP, 2014 WL 1652646, at *2 (D. Mass. Apr. 22, 2014) (citing Fed. R. Civ. P. 7(a)), report and recommendation adopted, No. 12-cv-30203-MAP, 2014 WL 2040161 (D. Mass. May 15, 2014). A memorandum of law in support of a motion to dismiss is not a pleading and as such Rule 12(f) does not apply here. See id. at *2 (citations omitted) (holding that Rule 12(f) "does not apply to motions and memoranda of law"). Accordingly, the Court DENIES the Cottrells' motions to strike. D. 10; D. 13.

Supp. 2d 361, 370 (S.D.N.Y. 2005)). Third, "where a private person 'conspires' with state actors to deprive someone of a federal right." Id. (quoting Hamilton v. Arnold, 135 F. Supp. 2d 99, 102 (D. Mass. 2001)).

None of the abovementioned scenarios is plausibly alleged here. First, the second amended complaint contains no allegations to permit a plausible inference that there is interdependence between Spencer and Vieira and the State Court Defendants. To the extent that the Cottrells are suggesting that interdependence can be inferred from the allegations that Spencer and Vieira engaged in alleged impermissible *ex parte* communications with the Clerks, they are inadequate to support that conclusion. Id. (holding that the defendants' close contact and regular reporting of information to the police department was insufficient to support an inference of interdependence). Second, the interactions between the Clerks and Vieira and Spencer do not support a reasonable inference that the Clerks significantly encouraged Vieira and Spencer to engage in their alleged conduct. Id. at 363 (describing state encouragement to include instances in which the state "actively controls the performance" of the private individual, "cloaks the individual with state authority, monitors the individual's performance, and substantially dictates the actionable conduct"). Lastly, as further discussed below as to Count II, the second amended complaint does not support an allegation of a conspiracy between Vieira and Spencer and the Clerks.

In addition, Cottrells appear to argue that the Individual Defendants are state actors because they are "officers of the court." See D. 15 ¶ 75. While "it is often said that lawyers are 'officers of the court,' . . . a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." Polk Cnty. v. Dodson, 454 U.S. 312, 318 (1981) (citations omitted). Thus, this status does not transform Spencer and Vieira into state actors for § 1983 purposes.

12

For the reasons discussed, Individual Defendants' motion to dismiss is allowed as to Count I.

### 2. Count II: Civil Rights Conspiracy Claim

To state a claim for civil rights conspiracy, a plaintiff must allege, among other elements, the existence of an agreement between the alleged conspirators to deprive the plaintiff of their civil rights. See Williams v. City of Boston, 771 F. Supp. 2d 190, 204 (D. Mass. 2011) (noting that the elements of such claim are "(1) an agreement between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing injury") (internal citation and quotation marks omitted). The Individual Defendants contend that the Cottrells have failed to provide "specific facts evidencing an agreement between the Clerk's office and Attorneys Vieira and Spencer" other than allegations of improper *ex parte* communications. D. 6 at 11. Here, the alleged contacts between the Individual Defendants and the Clerks were limited and consisted of routine communications relating to the filings of motions and other court papers. See e.g., D. 4 ¶¶ 46, 48, 49. Such limited communications are insufficient to support a reasonable inference that Individual Defendants and Clerks had entered into an agreement to deprive the Cottrells of their civil rights. See Alston v. Spiegel, 988 F.3d 564, 578 (1st Cir. 2021) (stating that "[v]ague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss"); Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980) (holding that "general allegations of cooperation between private individuals and unspecified government agencies do not . . . make out a claim of action taken under color of state law"). Accordingly, the Court allows the Individual Defendants' motion to dismiss as to Count II.

### 3. Count III: Fraud on the Court Claim

Lastly, Individual Defendants also argue that the Cottrells have failed to state a claim for fraud on the court. D. 6 at 8. Substantively, the Individual Defendants contend that "[n]one of the allegations plausibly, never mind clearly and convincingly, suggest that the Defendants engaged in an 'unconscionable scheme' to interfere with the justice system's ability to impartially adjudicate." Id. at 9. The Cottrells allege that Defendants have committed fraud on the Superior Court and further request that the Court vacate that court's judgments pursuant to Fed. R. Civ. P. 60(b). D. 15 ¶ 13. As an initial matter, Rule 60(b) does not authorize this Court to vacate the Superior Court's judgments. "Rule 60(b) grants federal courts the power to vacate judgments 'whenever such action is appropriate to accomplish justice.'" Bouret-Echevarria v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 41 (1st Cir. 2015) (quoting Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992)). The Cottrells, however, have failed to identify any legal authority supporting the proposition that a federal court may vacate a state court's judgment under the rule. To the contrary, at least one court has expressly held that federal district courts may not invoke Rule 60(b) to interfere with a pending matter before a state court. See McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc., 298 F.3d 586, 599 (6th Cir. 2002) (expressing that "Rule 60(b) may [not] be invoked to throw the weight of the District Court behind one side or another on an issue pending before a state court"); see also Coggeshall, 604 F.3d at 665 (explaining that "[t]he lower federal courts cannot be used as a substitute forum for federal appellate review of final decisions of state courts").

As to the elements of such claim, "[a] 'fraud on the court' occurs where 'it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some

14

unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.'" Wojcicki v. Caragher, 447 Mass. 200, 209-10 (2006) (quoting Paternity of Cheryl, 434 Mass. 23, 35 (2001)). "[A] determination of fraud on the court may be justified only by the most egregious misconduct directed to the court itself, and . . . it must be supported by clear, unequivocal and convincing evidence." United States v. Yeje-Cabrera, 430 F.3d 1, 28 n.22 (1st Cir. 2005) (internation quotation marks omitted) (alteration in original) (quoting Herring v. United States, 424 F.3d 384, 386-87 (3d Cir. 2005)). "Importantly, determinations of fraud upon the court must be reserved for 'very unusual cases involving far more than an injury to a single litigant.'" Glenwood Farms, Inc. v. O'Connor, 666 F. Supp. 2d 154, 178 (D. Me. 2009) (internal citation omitted). Thus, even sanctionable conduct during litigation may not be sufficient to state a claim for fraud on the court. See Gleason v. Jandrucko, 860 F.2d 556, 560 (2d Cir.1988) (holding that "neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant") (citations omitted).

Here, the Cottrells claim that the Individual Defendants had committed fraud on the Superior Court by engaging in improper *ex parte* communications with the Clerks as to certain motions and then filing them improperly. D. 15 ¶¶ 88, 91-92. These allegations are not enough to plausibly plead a claim for fraud on the court against the Individual Defendants, see Gleason, 860 F.2d at 560; Glenwood Farms, Inc., 666 F. Supp. 2d at 178, where such claim "may be justified only by the most egregious misconduct directed to the court itself, and . . .it must be supported by clear, unequivocal and convincing evidence," United States v. Yeje-Cabrera, 430 F. 3d 1, 28 n.22 (1st Cir. 2005) (internal citation and quotation marks omitted), which is not plausibly alleged here.

For these reasons, the Court allows the Individual Defendants' motion to dismiss as to Count III.

### B.     Denial of the Motion for Consolidation, To Stay Remand, To Enjoin State Court Proceeding and To Compel Compliance with Lawful Subpoenas is Warranted

#### 1.     Motion to Consolidate

The Cottrells have moved to consolidate this case with the related federal district case, Mann et al. v. Cottrell et al., 24-cv-10135-DJC, and the then-pending First Circuit case, Mann et al. v. Cottrell et al., 24-1555. D. 21 at 1. Given that both matters are closed, the Court DENIES the motion as moot. D. 21.[9]

#### 2.     Motion to Stay Remand

The Cottrells also moved the Court to stay the remand order in the related case, D. 21 at 2, which the Court issued on May 30, 2024, Mann et al. v. Cottrell et al., 24-cv-10135, D. 29. Given that the First Circuit affirmed the Court's Order, the Court denied the motion in that case as moot. Mann et al. v. Cottrell et al., 24-cv-10135, D. 33. The Court DENIES this motion for the same reason. D. 21.

#### 3.     Motion to Enjoin State Court Proceeding

The Cottrells request the Court to enjoin the Superior Court proceeding. D. 21 at 1. Commonwealth Defendants argue that enjoining the Superior Court proceeding would violate the Anti-Injunction Act because the Superior Court proceeding "does not fit within any exception to the [Act]." D. 23 at 8. The Court, however, need not reach this issue because since this Court

---

[9] Although not raised in this motion, the Cottrells argued at the motion hearing that the motion to consolidate is not moot because the Court could also consolidate the ongoing proceeding in the Superior Court. Given that the Court is only permitted to consolidate actions before it, Fed. R. Civ. P. 42(a), there is no legal basis (and indeed the Cottrells have not identified any) to suggest that the Court has the authority to consolidate state court matters under the rule. Accordingly, the Court denies the motion to consolidate on this basis as well.

16

now has allowed Defendants' motions to dismiss, D. 5; D. 18, the Court DENIES the Cottrells' motion to enjoin the state court's proceeding as moot, D. 21.

### 4. Motion to Compel Compliance with Superior Court Subpoena

The Cottrells move the Court to compel Vieira, Spencer and Sullivan to comply with the subpoena "seeking all copies of *ex parte* communications," D. 21 at 2, which was filed in the related federal district case, Mann et al. v. Cottrell et al., 24-cv-10135-DJC. That case, as discussed, was remanded to the Superior Court. "It is axiomatic that" once remand is accomplished, the "federal court is divested of jurisdiction." McGill v. Scholl, No. 06-cv-1231-FAB, 2007 WL 120773, at *2 (D.P.R. Jan. 10, 2007). Accordingly, the Court DENIES the motion to compel compliance with the request. D. 21.

### C. Request for Attorneys' Fees

The Individual Defendants' motion to dismiss includes a request for attorneys' fees pursuant to 42 U.S.C. § 1988(b). D. 5 at 1. The statute provides that "the court, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Court "may award attorney's fees to a prevailing defendant upon a finding that plaintiff's action was 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Andrade v. Jamestown Housing Auth., 82 F.3d 1179, 1192 (1st Cir. 1996) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)). That is, "[a]n award of attorney's fees to a prevailing defendant in a civil rights action . . . should be reserved for only those truly frivolous or patently unfounded claims." Champlin's Realty Assocs. v. Carcieri, No. 06-cv-135-MML, 2005 WL 4927835, at *2 (D.R.I. Nov. 30, 2005). "In determining whether this standard has been met, the court must assess the claim at the time the complaint was filed, and must avoid the post-hoc reasoning that, because the plaintiff did not ultimately prevail,

17

the claim must have been frivolous, unreasonable or without foundation." Tang v. State of Rhode Island Dept. of Elderly Affairs, 163 F.3d 7, 13 (1st Cir.1998) (noting that "decisions to grant defendants their fees [under 42 U.S.C. § 1988] are, and should be, rare").

It is a close case whether the claims here, particularly the claims for alleged constitutional violations, are patently unfounded as to justify the imposition of attorneys' fees. See Champlin's Realty Assocs., 2005 WL 4927835, at *2. Although the claims against the State Court Defendants are barred by the sovereign and quasi-judicial immunity, the analysis of the claims against the Individual Defendants were not so patently unfounded to warrant the imposition of attorney's fees. See Quaglieri v. Steeves, No. 11-cv-10377-DJC, 2013 WL 1222220, at *8 (D. Mass., Marc. 26, 2013) (denying the defendants' motion for attorneys' fees on the ground that the plaintiff's claims were not so "patently unfounded that [it] is the 'rare' civil rights case in which the award of attorney's fees to them is warranted"). Accordingly, the Court DENIES the Individual Defendants' request for attorneys' fees. D. 5 at 1.

### D.    Motion to Enter an Order Precluding Further Filings Without Leave of Court

Although the Court is now granting the motions to dismiss, the Court still deems it necessary to address the State Court Defendants' motion to preclude further filings by the Cottrells, D. 23 at 8, given the multiple filings by the Cottrells' counsel both before and after the motion hearing on the pending dispositive motions. See D. 26; D. 27; D. 30; D 31; D. 33. Accordingly, the Court ALLOWS the motion to preclude further filings by the Cottrells in this case without leave of Court. Accordingly, the Cottrells are not permitted to submit additional filings in this matter (with the exception of any notice of appeal) without first seeking leave of the Court to do so.

## VI.     Conclusion

For the reasons stated above, the Court ALLOWS Defendants' motions to dismiss, D. 5; D. 18, and Commonwealth Defendants' motion to preclude further filings (with the exception of any notice of appeal) without leave of Court, D. 23 at 8, but DENIES Individual Defendants' motion for attorneys' fees, D. 5 at 1.  The Court DENIES the Cottrells' motions.  D. 10; D. 13; D. 21.

**So Ordered.**

                                                                                     /s Denise J. Casper
                                                                                     United States District Judge